IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

DEXTER DEUWAN MITCHELL      §
     §
        Plaintiff      §
     §
v.      §    No. SA-14-CA-680
     §
STEFAN HAWKINS, ZACHARY BROCK,      §
GREGORY MOSS, MARCUS KELLER,      §
and PRESTON WELSH      §
     §
        Defendants      §
     §

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dexter Deuwan Mitchell brought this civil action for damages under 42 U.S.C. § 1983, alleging that the Defendants deprived him of rights guaranteed by the Eighth and Fourteenth Amendments to the Constitution of the United States. On March 23, 2015, the case was tried to the Court without the intervention of a jury. The Court's findings of fact and conclusions of law are incorporated in this Opinion.

Plaintiff Mitchell is a state prisoner serving a sentence in the custody of the Texas Department of Criminal Justice. In 2014, he was assigned to the Connally Unit in Karnes County, Texas. In March 2014, Mitchell had been placed in Administrative Segregation (in common parlance, solitary confinement) due to his history of aggressive and unruly behavior and chronic violation of institutional rules. This meant that he occupied a single cell, from which he was removed only for brief periods of time and for

limited purposes, such as bathing. His meals were delivered to him by means of a food tray slot in the metal door of his cell.

On March 29, 2014, Mitchell was scheduled for a shower. The institutional rules required that he be handcuffed before removal from the cell. This was accomplished by means of Mitchell extending both arms from the interior of the cell into the food tray slot where an officer would apply the handcuffs. On this date, the correctional officer assigned to escort Mitchell to the shower had just begun the process of placing the handcuffs on Mitchell's left arm when he pulled his arm inside the cell, taking the unfastened handcuffs with him. One of the Defendants, Sgt. Marcus Keller, was called to the scene and ordered Mitchell to surrender the handcuffs which were capable of being used as a weapon if correctional personnel entered the cell.

Repeated orders to surrender the handcuffs were ignored by Mitchell. Apparently expecting the use of chemical spray, Mitchell proceeded to barricade his cell door with a mattress and blanket. When chemical spray was in fact used, it was ineffective because of Mitchell's makeshift barricade. He also utilized a towel or sheet to cover his face in a further effort to stave off the effect of the chemical spray.

In between bursts of the chemical spray, Sgt. Keller repeated his order to surrender the handcuffs and also ordered Mitchell to submit to a strip search for any additional weapons. Mitchell

continued to refuse all orders.

After the chemical agent had been sprayed at least six times, Mitchell agreed to surrender the handcuffs. He did so, using the food tray slot. However, he continued to refuse to comply with the strip search order, and the mattress and blanket barricade made it impossible to see inside the cell.

After a "standoff" which lasted at least 20 minutes, Sgt. Keller ordered a five-man extraction team to enter the cell and remove Mitchell. The five-man team consisted of correctional officers Leven,[1] Hawkins, Brock, Moss, and Welsh. The first man, Leven, carried a plastic shield, and his assignment was to attempt to pin Mitchell against a wall. Officers Welsh and Moss were assigned to restrain his arms and apply the handcuffs. Officers Brock and Hawkins were assigned to restrain his legs and to apply the leg irons.

When the cell door opened and the five-man team rushed in, things did not go exactly according to plan. The chemical floor spray had made the floor slippery, and Leven had difficulty in attempting to pin Mitchell with the shield. Defendant Moss seized Mitchell in a "bear hug" and both fell to the floor. As Mitchell fell forward, his mouth and jaw hit the sink with enough force to break or knock out two teeth. Mitchell continued to struggle, as

---

[1] Leven is the only member of the five-man team not named as a Defendant in this case.

3

the team of officers attempted to apply handcuffs and leg restraints. After 15 or 20 seconds, another spray of the chemical agent helped subdue Mitchell, who was finally placed in hand and leg restraints, and escorted out of the cell. In the corridor, he was briefly examined by Antonio Mejia, an LVN, who conducted what is called a "head-to-toe assessment." Mejia observed that two teeth were missing, and heard Mitchell complain of pain to his jaw and rib cage. According to Mejia, he exhibited no signs of a head injury.

Mitchell alleges that each of the four officers with whom he was wrestling (Welsh, Brock, Moss, and Hawkins) punched or kicked him in the head or face at least 20-25 times, and that Sgt. Keller, who followed them into the cell, kicked him in the back of his head while he was lying on the floor, causing him to lose consciousness. According to Mitchell, when he came to, he was lying on the floor in the corridor outside his cell. He contends that the five Defendants used unreasonable and excessive force maliciously and sadistically, violating his Eighth and Fourteenth Amendments right to be free from cruel and unusual punishment, and causing serious bodily injuries to his mouth, jaw, eyes, and other parts of his body.

In his trial testimony, Mitchell admitted that he knew on March 29, 2014, that he was not allowed to have handcuffs in his cell, and that he was not allowed to block the cell door with his

mattress or other objects. He also admitted that he was given orders to surrender the handcuffs and to submit to a strip search, and that he refused to comply with those orders. Under the circumstances, therefore, the use of chemical agents and physical force was justified to bring Mitchell into compliance with the rules while, at the same time, preventing injury to correctional personnel. Mitchell insists, however, that the degree of force used was so excessive as to indicate a malicious intent on the part of the Defendants to impose cruel and unusual punishment.

It is clear from the foregoing discussion that the Defendants used significant force in the process of removing Mitchell from his cell and that he sustained significant bodily injuries.[2] However, some of Mitchell's claims in this regard lack credibility. For example, Mitchell claims that Sgt. Keller kicked him in the back of the head; that he lost consciousness; that he was dragged out of the cell and woke up lying on the floor in the corridor. However, a video camera was used to record Mitchell's emergence from his cell, and it shows him walking out under his own power. The camera also recorded the LVN's "head-to-toe" examination of Mitchell, which revealed no visible trauma to his head other than the missing

---

[2] The dental services to remove or replace damaged teeth were provided at the institution. A traumatic injury to Mitchell's left eye required surgery at the University of Texas Medical Branch in Galveston. Mitchell did not lose vision in that eye, but testified at the trial that his vision was somewhat "blurry."

teeth.[3]  Further, a search of the cell after Mitchell's removal resulted in the discovery of the broken teeth in a location consistent with the testimony that he struck his mouth against a sink as he was falling forward.  In short, although significant force was used, Mitchell has failed to prove by a preponderance of the evidence that the force was unnecessary or excessive in degree, or that it was administered for the purpose of punishment rather than to achieve compliance with prison rules.

IT IS THEREFORE ORDERED that Judgment be, and it is hereby, ENTERED in favor of the Defendants, and that the Plaintiff take nothing by his suit.

SIGNED AND ENTERED this 30th day of March, 2015.

*[signature: Harry Lee Hudspeth]*
HARRY LEE HUDSPETH
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] This is inconsistent with Mitchell's claim that five different officers punched or kicked his head a minimum of 20 times each, or a total of 100 times.